AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Texas

United States Courts
Southern District of Texas
FILED
February 23, 2023
Nathan Ochsner, Clerk of Court

United States of America
v.
ALEXANDRA ELIZABETH NICKS, a/k/a "Allie,"
a/k/a "Bloodbath," a/k/a "Alimo,"
a/k/a "Alamo"

Case No. **4:23-mj-347**

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  October 2, 2017 to October 16, 2017  in the county of   Harris   in the
  Southern   District of   Texas  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 1959(a)(1) and 2 | Aiding and Abetting Violent Crimes in Aid of Racketeering Activity |

This criminal complaint is based on these facts:
see attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

ATF Special Agent Dominic Rosamilia
*Printed name and title*

Sworn to and signed by telephone.

Date:  02/23/2023

_____
*Judge's signature*

City and state:  Houston, Texas

United States Magistrate Judge Christina Bryan
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
**FILED**
*February 23, 2023*
Nathan Ochsner, Clerk of Court

IN THE MATTER OF THE CRIMINAL COMPLAINT AGAINST ALEXANDRA ELIZABETH NICKS, a/k/a "Allie," a/k/a "Bloodbath," a/k/a "Alimo," a/k/a "Alamo"

Case No. __4:23-mj-347__

## AFFIDAVIT

1) I am a Special Agent (SA) of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, and have been so employed since April of 2009. I graduated from the Federal Law Enforcement Training Center and the ATF National Academy in Glynco, Georgia. I am presently a member of Houston Group II of the ATF. As a Special Agent of the ATF, my duties and responsibilities include conducting criminal investigations of individuals and entities for possible violations of federal laws, particularly those laws found in Titles 18 and 26 of the United States Code. I am empowered under Title 18, United States Code, Section 3051 to make arrests and serve warrants.

2) I have received additional law enforcement training at the Chesterfield County Police Department, Virginia, where I was employed by Chesterfield County Police for thirteen years. While at Chesterfield County Police Department I attained the rank of sergeant, and was assigned to investigations, vice and narcotics, community policing, and patrol. I have instructed several topics throughout the state of Virginia to include Search and Seizure and Basic Law. I am a graduate of the State University of New York at Buffalo with a bachelor's degree in Health and Human Services.

3) My current assignment with ATF involves the investigation of individuals who traffic firearms, violent criminals, and criminal organizations such as street gangs and drug trafficking organizations. I have used cooperating informants, undercover agents, pen register/trap and

trace devices, video surveillance, wiretaps, GPS tracking devices, and audio surveillance, among other law enforcement techniques, during my career with ATF.

4) I am currently one of several agents assigned to a long term, multiagency investigation led by ATF, the Houston Police Department (HPD) and the Federal Bureau of Investigation (FBI) regarding probable crimes committed by members and/or associates of the 100% Third Ward (103) criminal street gang operating in the Southern District of Texas (SDTX) and elsewhere.

5) Investigators have determined that Alexandra Elizabeth NICKS, a/k/a "Allie," a/k/a "Bloodbath," a/k/a "Alimo," a/k/a "Alamo," ("NICKS") is a leader of the 100% Third Ward (103) who relayed messages from an imprisoned 103-gang leader to 103-gang members on the Houston streets and organized and directed violent crimes.

6) Investigators determined that NICKS, along with others, known and unknown, were members and/or associates of the 100% Third Ward (103) an organization engaged in, among other crimes, acts involving murder; robbery; narcotics distribution; and assault. At all times, the 100% Third Ward (103) operated in the Southern District of Texas, Houston Division and elsewhere.

7) The 100% Third Ward (103), including its leadership, membership, and associates, constitutes an enterprise as defined in Title 18, United States Code, § 1959(b)(2), that is, a group of individuals associated in fact which engages in, and the activities of which affect, interstate and foreign commerce. The enterprise constitutes an ongoing organization whose members and associates function as a continuing unit for a common purpose of achieving the objectives of the enterprise.

8) The 100% Third Ward (103), through its leaders, members, and associates, engages in racketeering activity as defined in Title 18, United States Code, §§ 1959(b)(1) and 1961(1),

namely offenses involving the distribution of controlled substances in violation of 21 U.S.C. § 841 and 846.

## PURPOSE OF THIS AFFIDAVIT

9) I am submitting this affidavit in support of a criminal complaint and arrest warrant charging NICKS with Murder in Aid of Racketeering, in violation of Title 18, United States Code, Section 1959(a)(1).

10) The facts set forth in this affidavit are based upon my personal observations, my training and experience, information obtained from other agents and witnesses, evidence obtained from search warrants, authorized wire and electronic interceptions in this investigation, interviews, records, and other sources, as detailed further below. This affidavit is intended to show merely that there is sufficient probable cause for the requested criminal complaint and arrest warrant and does not purport to set forth all of my knowledge of the investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## PROBABLE CAUSE

A. <u>Background Information On the 100% Third Ward (103)</u>

11) Based on information provided through, among other means, the debriefings of 103-gang members in this and other 100% Third Ward (103), investigations, and speaking with other law enforcement agents, I am aware of the following facts, among others, about the 100% Third Ward (103).

12) 100% Third Ward (103) criminal street gang (hereinafter, "103," or "103 Gang") is a violent criminal street gang involved in a variety of violent criminal activities primarily operating in Southeast Houston.

13) The 103 recruits its members from the neighborhoods within the Historic Third Ward area of Houston, Texas, typically juveniles. The leaders of the 103 include members who influence and direct the criminal activities of other, typically younger, members, and identify targets for the members to murder. The leaders call meetings and issue orders for the younger members to commit violent acts to maintain 103's reputation, status, and position in their territory.

14) 103 members reside in and frequent the geographic neighborhoods of Third Ward and commonly carry firearms on their person in furtherance of establishing gang hang outs and other "territory," such as strip centers, parks, and apartment complexes, that are free of rival gang members.

15) 103 members and associates often communicate through various forms of electronic communication, including Instagram, phone calls, jail calls, and text messages. At times, members and associates use gang symbols and code words to communicate to avoid revealing their criminal activity.

16) 103 members are required to attend meetings called by the gang's leadership and to provide financial support for members who are incarcerated.

17) 103 members and associates identify themselves within smaller cliques of members. Members and associates of the enterprise identify themselves through, amongst other things, clothing, hand signals and tattoos which signify gang affiliation.

18) To protect the power, reputation, and territory of 103-gang, 103 members and associates are required to use violence, threats of violence, and intimidation. These acts of violence often include murder and assault with deadly weapons, including firearms. Members of 103 enhance their status in the gang by participating in such acts of violence.

19) 103 members and associates are encouraged to confront, fight, and kill rival gang members. The Young Scott Block criminal street gang and its associates are known rivals of 103 in Houston, Texas. Members and associates of 103 are expected to protect the name, reputation, and status of the gang from rival gang members and other persons.

20) Houston's historic Third Ward and the Sunnyside neighborhood has long been associated with crime and gang activity. The Third Ward and Sunnyside neighborhoods border each other in the Southeast section of Houston. The Third Ward and Sunnyside neighborhoods are home to two local criminal street gangs. In the Third Ward, the main gang is the 103-gang and, in Sunnyside it is the YSB gang, which originated on Scott Street in Houston. The established dividing line between the two gangs' territories is the roadway Old Spanish Trail in Southeast Houston. These two gangs are umbrella organizations for smaller cliques that operate underneath them and are normally organized around the streets where the cliques operate.

21) The 103-gang and YSB gang rivalry has existed since the formation of the 103-gang. The two gangs are neighborhood street gangs whose territory borders one another. Both gangs sell street level narcotics in their respective neighborhoods. Each gang competes for drug sales and territory in the Third Ward which has led to violence and murders. In approximately 2011, YSB associates are believed to have killed a 103-gang associate, at a 103-gang stronghold location. This set off the wave of retaliatory murders in the Third Ward.

 B.  Purposes Of The 103-Gang

22) The purposes of the 103-gang include the following:

   a) Preserving and protecting the power, territory, and reputation of 103 through the use of violence, threats of violence, and intimidation;

   b) Promoting and enhancing 103 and the activities of its members and associates by committing crimes, including but not limited to, murder;

c) Keeping victims, potential victims, and community members in fear of the 103 and its members and associates through violence, threats of violence, and intimidation;

d) Confronting and retaliating against rival gangs through the use of violence, threats of violence and intimidation;

e) Ensuring discipline within the 103-gang and compliance with the 103 gang's rules by members and associates through threats of violence and acts of violence;

f) Enriching the 103 members and associates through criminal activity, including robbery, extortion, and narcotics trafficking;

g) Hindering and obstructing efforts of law enforcement to identify, apprehend, and successfully prosecute offending 103 gang members; and

h) Providing financial support and information to 103 members and associates, including those who are incarcerated.

C. <u>Methods And Means of the 103-Gang</u>

23) Among the methods and means by which 103 members and associates conduct and participate in the conduct of the affairs of the enterprise are the following:

a) 103 members and associates use violence, threats of violence, and intimidation, including acts involving murder, robbery, and assault, to preserve, protect, and expand the 103-gang's criminal operations and to enhance its prestige, reputation and position within the community. This includes activities such as displaying hand signs, obtaining tattoos related to the 103-gang, and boasting about the existence and activities of the 103-gang in rap songs and social media posted on the Internet;

b) 103 members and associates promote a climate of fear through violence, threats of violence, and intimidation, including against members of rival gangs and others adverse to the 103-gang;

c) 103 members and associates use violence, threats of violence, and intimidation to discipline and punish members and associates who violate 103-gang rules;

d) 103 members and associates manage the procurement, transfer, use, concealment, and disposal of firearms within the 103-gang to protect gang-related territory, personnel, and operations, and to deter, eliminate, and retaliate against rival gang members and others adverse to the enterprise;

e) 103 members and associates obtain, use, carry, possess, brandish, and discharge firearms in connection with the illegal activities of the 103-gang, including, but not limited to acts involving murder, robbery, assault, and the illegal trafficking of controlled substances;

f) 103 members and associates procure, maintain, use, and dispose of stolen vehicles in order to carry out the objectives of the 103-gang;

g) 103 members and associates use cellular telephones and social media to discuss gang-related business and to plan and discuss the use of violence to further the 103-gang's purpose;

h) 103 members and associates use, attempt to use, and conspire to use robbery, extortion, and narcotics trafficking as a mechanism to obtain money;

i) 103 members and associates collect money to send to 103 members who are incarcerated;

j) 103 members and associates hide, misrepresent, conceal, and cause to be misrepresented, concealed, and hidden, the objectives of acts done in furtherance of the 103-gang, and used coded language and other means to avoid detection and apprehension by law-enforcement authorities; and

k) 103 members and associates commit acts of intimidation and make threats as a means of deterring and/or punishing potential witnesses to their crimes and in connection with

protecting the 103-gang and its members and associates from detection and prosecution by law enforcement authorities.

D. Murder In Aid of Racketeering

24) On or about October 16, 2017, in the Southern District of Texas, the Defendant, NICKS, and others known and unknown, aiding and abetting each other and others, for the purpose of gaining entrance to, and maintaining and increasing position in, the 100% Third Ward (103), an enterprise engaged in racketeering activity, did intentionally and knowingly murder Sam Johnson, in violation of Texas Penal Code §§ 19.01, 19.02, 7.01, and 7.02, all in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

25) On October 16, 2017, HPD officers responded to a shooting that occurred at approximately 1:15 p.m. near a residence located at 6833 London Street, Houston, Texas in the Southern District of Texas. HPD officers who arrived on the scene found a black male, later identified as Johnson, lying in the front yard deceased, with shell casings scattered in the nearby street. A blood trail departing the location was observed that appeared to show another wounded victim had departed the area.

26) HPD officers gathered video footage from surveillance cameras located at a nearby motel located immediately down the street from the murder scene. The motel video depicted two persons, who were later identified by HPD officers as Victim #2, a person known to law enforcement, and Sam Johnson, both walking towards a residence on the corner of London and Idaho Streets.

27) The video shows a Mazda, later determined to be stolen, driving on Idaho Street and stopping near the residence. Immediately, shooting erupted from the Mazda and the victims tried to run for cover. The shooters continued to fire from the vehicle as the Mazda attempted

to flee the scene but was driven directly into a drainage ditch, disabling the vehicle. Four men jumped from the Mazda leaving the doors open and the engine running. They ran down Idaho Street toward the motel while continuing to fire their weapons towards the residence.

28) The video showed that a Kia Sedona, which had been idling in the street, had pulled into the motel's lot when the shooting started. Three of the shooters ran to the Kia and physically threw the driver and her infant passenger from the vehicle while brandishing firearms at her. The person who entered the driver seat, turned and fired multiple shots from a rifle toward the residence to which Johnson and Victim 2 were headed. The three then fled in the carjacked car. The Fourth suspect fled down the street on foot.

29) HPD interviewed Victim #2 who presented to a nearby hospital and was treated for his injuries. HPD knew Victim #2 as a member of the Young Scott Block (YSB), which has been engaged in a gang war with the 103 gang. Victim #2 stated that persons shot at him from a moving vehicle, however, he did not identify who shot at him.

30) Based on the motel video and an anonymous tip, HPD identified the four shooters and arrested them. At the time of the arrests, cellular telephones were collected and HPD officers learned that the shooters utilized social media, specifically Instagram.

31) HPD officers also reviewed jail calls of known 103 gang members and obtained jail calls between NICKS and a known 103 gang leader who was incarcerated in Harris County Jail. These calls were recorded by Harris County Jail authorities pursuant to policy—a notice of which is posted in plain sight by the phones. Prior to persons being able to communicate on the call, notice that calls made on the jail phones are subject to monitoring is also transmitted to all parties via a recording.

32) During an October 2, 2017, recorded jail call, a 103-gang leader called NICKS from the jail phone to express his anger that a 103-gang member was promoting a YSB gang member's rap song on a 103-gang leader's Twitter page. The two discussed their mutual dissatisfaction that some 103-gang members were being too friendly with YSB members. The 103-gang leader told NICKS that he wanted a meeting of all 103 gang members. NICKS initiated a three-way call with another 103-gang member, who was one of the persons who shot at Sam Johnson. A meeting was planned for later that night. The call ended shortly thereafter.

33) After the call ended, the same 103-gang leader called NICKS again on the recorded jail phone, and she again initiated a three-way call with the same person as the earlier call. In this call, the three discuss how 103 gang members are not putting the gang first and that needed to change.

34) On October 11, 2017, in a Harris County Jail recorded phone conversation between the 103-gang leader and NICKS, NICKS told the incarcerated leader about drive-by shootings conducted by the YSB gang against 103-gang members in 103-territory. NICKS stated "I hollered at Little Dre and told him they needed to get some tools out there before the sun goes down. They said they were going to get the pumps. I told them they needed some glocks. Something they could move around with. Maybe a Draco." I know that a "Draco" is a handheld AK-47-style pistol and "glocks" is a brand of firearm, primarily pistols. I also know from experience that the term "tools" is often used by gang members to refer to firearms generally.

35) On October 12, 2017, in a Harris County Jail recorded phone conversation, NICKS told the 103-gang leader that a 103-gang member and/or associate had been shot. NICKS again

initiated a three-way call with the same individual as in the October 2, 2017 calls. During this three-way call, the incarcerated leader provided NICKS and the other 103 gang member on the call the home addresses of several rival YSB members. The 103-gang leader told NICKS and the other caller "You need to tell them people to pull up it's time. All that not retaliating is dead! Put my twitter on your phone." He then relates information to place on his Twitter account. Later in the conversation NICKS goes on to say "I'm going to try to find a car for them niggas for sure.

36) On October 15, 2017, Harris County Jail recorded a phone conversation between the gang leader and NICKS, she tells him about her upcoming record deal and states that she will pay the "youngins" to shoot. When he asked her about the retaliation, she states that they are ready, but she does not just want to go and "just dry shoot at windows." Before the call ended, she tells him "you're going to have some good news in the morning when you turn on channel 13." Johnson was shot and killed on October 16, 2017.

37) HPD officers obtained search warrants for the Instagram accounts of the suspects involved in the shootings. Upon review of these accounts, HPD discovered conversations between some of the shooting suspects and NICKS that preceded the murder of Sam Johnson. In one of these conversations, NICKS asked a 103-gang member/associate where he was, and the individual responded that he had the "whips and tools" and "whips and sticks." HPD officers familiar with the 103 gang know that whips refer to cars, tools refer to guns and sticks refers to rifles and/or long guns. Moreover, during these conversations the gang leaders told NICKS that those who did not follow his orders to retaliate by shooting suspected rival gang members would be expelled from the gang.

38) In an Instagram conversation on October 16, 2017, at approximately 12:30 p.m. CST, NICKS had a conversation with another 103 gang member/associate. During that conversation, the individual asked

if NICKS got a car for that day and she named one person who had a car, that individual was one of those involved in the Johnson murder. The person with whom NICKS was speaking said that he couldn't be in the car because it was stolen.

39) On October 18, 2017, the Harris County Jail recorded a phone conversation between the incarcerated gang leader and NICKS. In the call, she asked him if he "was looking at the TV today." She told him that only one person [the suspect who fled on foot] had been caught but "you can't see him doing anything" They also discussed the arrest and NICKS told him that the person arrested was "solid." I have reason to believe based on my training and experience that by using the term "solid" NICKS was indicating that the person who had been arrested was unlikely to cooperate with police.

## CONCLUSION

Based on the forgoing, I respectfully submit that there is probable cause that ALEXANDRA ELIZABETH NICKS has violated Title 18, United States Code, Sections 1959(a)(1) and 2.

Respectfully submitted,

Dominic Rosamilia
Special Agent, ATF

Subscribed and sworn to telephonically on February 23, 2023 and I find probable cause.

CHRISTINA BRYAN
United States Magistrate Judge