Case 4:23-cr-00105   Document 212   Filed on 02/06/25 in TXSD   Page 1 of 16

United States Courts
Southern District of Texas
FILED
*February 6, 2025*
Nathan Ochsner, Clerk of Court

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** § | |
| § | |
| v.  § | **CRIMINAL NO. 23-CR-00105** |
| § | |
| **DEANDRE WATSON** § | |
| § | |

# PLEA AGREEMENT

The United States of America, by and through Nicholas J. Ganjei, United States Attorney for the Southern District of Texas, and Kelly Zenon-Matos, Assistant United States Attorney, and Jodi Anton, Department of Justice Trial Attorney, Defendant, **Deandre Watson**, and Defendant's counsel, pursuant to Rule **11(c)(1)(C)** of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

## The Defendant's Agreement

1. Defendant agrees to plead guilty to the sole count of the Indictment which charges the Defendant with causing death through the use of a firearm during and in relation to the murder in aid of racketeering of S.J., in violation of Title 18, United States Code, Sections 924(j)(1) and 2. Defendant also admits the Forfeiture Allegation in the Indictment. Defendant agrees to persist in this plea through sentencing. The United States and the Defendant have agreed to a sentence of thirty-five (35) years imprisonment followed by a term of supervised release as determined

by the Court. If this plea agreement is accepted by the court, the Defendant is aware and agrees that a sentence of thirty-five (35) years will be imposed by the Court. If the Court does not accept the plea agreement, Defendant will have the right to withdraw his guilty plea. Rule 11(c)(5)(A)&(B). Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in an Indictment or proven to a jury or judge beyond a reasonable doubt.

## Punishment Range

2.     The statutory maximum punishment for Count One of the Indictment is up to life imprisonment or death, a term of supervised release of not more than five years, and a fine of $250,000.00 or twice the gross proceeds of the crime, whichever is greater.  The Attorney General has authorized the United States not to seek the death penalty against Defendant.  Accordingly, the maximum penalty in this case is life imprisonment. Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for up to five years without credit for time already served on the term of supervised release prior to such violation on each case. *See* Title 18, United Stated Code, sections 3559(a) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, § 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

## Waiver of Appeal

5. Defendant is aware that Title 28, United States Code, § 1291, and Title 18, United States Code, § 3742, afford a defendant the right to appeal the conviction and sentence imposed. Additionally, Defendant is aware that Title 28, United States Code, § 2255, affords the right to contest or "collaterally attack" a conviction or

sentence after the conviction or sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or collaterally attack the conviction and the sentence imposed, or the manner in which the sentence was determined, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event the Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks her conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

6. Defendant understands and agrees that each and all waivers contained in this plea agreement are made in exchange for the concessions made by the United States in this plea agreement.

7. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this Plea Agreement.

### The United States' Agreements

8. The United States agrees to the following:

   (a) The United States agrees that Defendant should receive credit for all of the time he has been in federal custody, including the time he was in federal custody in Harris County as it related to the charges ultimately brought in the Southern District of Texas in this indictment.

   (b) The United States agrees that the sentence should be imposed

4

concurrent to the life sentence the Defendant is already serving in state prison as evidenced by Harris County Trial Court Cause No. 1575339.

### Agreement Binding - Southern District of Texas and VCRS only

9. The United States Attorney's Office for the Southern District of Texas and the Violent Crime and Racketeering Section ("VCRS") of the Department of Justice agree that they will not further criminally prosecute Defendant in the Southern District of Texas for the specific conduct described in the Indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas, VCRS, and Defendant. It does not bind any other United States Attorney's Office or any other section of the United States Department of Justice. The United States Attorney's Office for the Southern District of Texas and VCRS will bring this plea agreement to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

10. The United States reserves the right to carry out its responsibilities under the Sentencing Guidelines. Specifically, the United States reserves the right:

 (a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

 (b) to set forth or dispute sentencing factors or facts material to sentencing;

 (c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)   to file a pleading relating to these issues, in accordance with U.S.S.G. § 6A1.2 and Title 18, United States Code, § 3553(a);

(e)   to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

11.   Defendant is aware that the sentence will be imposed after consideration of the Sentencing Guidelines, which are only advisory, as well as the provisions of Title 18, United States Code, § 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court, and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this Plea Agreement.

## Rights at Trial

12.   Defendant represents to the Court that he is satisfied that his attorney has rendered effective assistance. Defendant understands that by entering into this Agreement, he surrenders certain rights as provided in this Plea Agreement. Defendant understands that those rights include the following:

(a)   If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b)   At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court.

(c)   At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

13.   Defendant is pleading guilty because he _is_ guilty of the charges contained in the Indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

7

### 103-Gang

The Defendant and his codefendants Shaquile O'Neal Richards, Alexandra Elizabeth Nicks, Mertroy Harris, Marcus Dewane Christopher, and Marquis Juwan Erskin, along with others known and unknown, were members and associates of the 103 Gang, a criminal organization whose members and associates engaged in acts involving murder and drug trafficking. The Defendant along with codefendants Harris, Erskin, and Christopher were directed by 103-gang members and leaders and codefendants, Richards and Nicks, to conduct the drive by shooting that led to the death of S.J. and the shooting of W.F. The shooting was planned as part of the gang war between 103-gang and its rivals. Defendant, and other coconspirators, planned and conducted the shooting to maintain or increase their position within 103-gang.

The 103 gang, including its leadership, membership, and associates, constituted an enterprise, as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce ("the Enterprise" or "103-gang"). The Enterprise constituted an ongoing organization whose members and associates function as a continuing unit for a common purpose of achieving the objectives of the Enterprise. 103-gang, through its leaders, members, and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts involving murder, in violation of Texas state law, and offenses involving drug trafficking, in violation of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with intent to distribute a controlled substance) and 846 (conspiracy to distribute and possess with intent to distribute a controlled substance).

The 103-gang members utilize social media and direct messaging to identify themselves and to communicate, including for discussing and planning gang-related violence and other crimes. 103-gang members are expected to violently protect the name, reputation, status, and territory of the gang from rival gangs, primarily the Young Scott Block ("YSB-gang"). Additionally, 103-gang member's assist each other in committing violent crimes by sharing weapons, obtaining stolen cars, and when arrested, providing funds for bond, attorney fees and commissary accounts. Participation in criminal activity by a member and associate, particularly violent acts directed at rival gangs or as directed by gang leadership, increases the respect accorded to that member or associate, or results in membership, maintenance, and increased position in the gang, and opens the door to promotion to a leadership position.

### October 16, 2017 Murder

On October 16, 2017, the Defendant with other members and associates of 103-gang, Mertroy Harris, Marcus Dewane Christopher, and Marquis Juwan Erskin, murdered S.J. and wounded W.F. in retaliation for a gang-related shooting against 103-gang that occurred previously. Co-defendant and fellow103-gang members, Richards and Nicks, ordered that 103-gang members retaliate against the YSB-gang, who was believed to have done the prior shooting against the 103-gang. Defendant's purpose in committing the murder of S.J. was, at least in part, because it was expected of him by virtue of his association and membership in 103-gang and/or to maintain or increase his position in the Enterprise.

On October 16, 2017, at approximately 1:15 p.m., the Defendant, Harris, Christopher, and Erskin, all members or associates of the 103-gang, traveling in a stolen 2007 Mazda CX7, in the 6800 block of London Street, Houston, Texas shot W.F., a rival YSB-gang member, and S.J., who was not affiliated with any gang. While the injuries to W.F. were non-fatal, S.J. sustained multiple gunshot wounds to his torso and died at the scene. The Defendant fled the shooting scene by carjacking a Kia and fleeing with codefendants Christopher and Erskin leaving codefendant Harris behind. The drive-by shooting was captured on video surveillance from a nearby business. The Defendant can be seen in the footage firing an AR-15 style rifle at the victims. The video depicts the Defendant pointing the rifle at the Kia's owner and then firing back at the victim S.J. The Defendant was wearing black clothing and can be seen with a ponytail. Law enforcement familiar with the Defendant recognized him from the video.

The Defendant was arrested on October 25, 2017. In the apartment where he was arrested, law enforcement recovered an AR-15 with .223 rounds in the magazine, which matched casings recovered at the murder scene. Law enforcement also recovered the Defendant's iPhone. The cellphone call history shows that the Defendant was in contact with the codefendants leading up to the time of the murder. FBI conducted a cell site mapping analysis which shows that the Defendant was in the area of the shooting scene at the time of the murder. In addition, the homeowner where the Defendant was arrested identified him as the person with the ponytail in the business surveillance video. DNA evidence recovered from the Mazda that was used to commit the drive by shooting also implicated the Defendant was in that vehicle.

At the scene, law enforcement recovered two pistols, high-capacity magazines and over 30 fired casings from the street of the residential neighborhood. Law enforcement reviewed numerous jail phone calls and Instagram direct messages between the codefendants which show that the murder was, in fact, a 103-gang related retaliatory killing. In recorded jail phone calls, the Defendant admits to being a member of the 103 gang. The recorded jail calls further evidence that 103

gang members and codefendants Richards and Nicks were in a leadership position and that Richards and Nicks directed the younger tier 103 gang members specifically, the Defendant, to retaliate against the rival gang YSB. Law enforcement reviewed the Defendant's Instagram account, username problemgang_dre, which evidenced that the Defendant carried out this shooting based upon orders given by codefendants Richards and Nicks, on October 2, 2017. The Defendant's Instagram account also contained numerous photos of him with other known 103 gang members displaying gang signs. Messages in the Defendant's Instagram account show that he communicated with other 103 gang members and notified them of a 103-gang meeting scheduled on October 3, 2017, to discuss retaliation. Evidence from the social media returns from the codefendants show that the gang members conspired to commit a retaliatory attack against any member of the rival YSB gang when given the opportunity.

All of the above facts occurred within the Southern District of Texas.

## Breach of Plea Agreement

14. If Defendant should fail in any way to fulfill completely all of the obligations under this Plea Agreement, the United States will be released from its obligations under the Plea Agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals or disposes of assets in violation of this Plea Agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this Plea Agreement, and all leads derived therefrom, will be used against Defendant in any prosecution.

### Monetary Penalties, Assets and Financial Disclosures

15. Defendant understands and agrees that monetary penalties will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 and that monetary penalties will be submitted to the Treasury Offset Program so that payments to Defendant may be applied to federal debts.

16. Defendant understands that restitution, forfeiture, and fines are separate components of sentencing and are separate obligations. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines. Subject to the provisions of paragraph 5 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, any restitution order, any forfeiture orders, and any fines.

### Forfeiture

17. As part of this plea agreement, Defendant agrees to the following:

(a) to forfeit, via either an administrative or judicial proceeding, all assets listed in the charging document (including any Supplemental Notice of Forfeiture), and to forfeit or abandon any assets seized during this investigation or a related investigation.

(b) to the order of forfeiture becoming final as to Defendant immediately following this guilty plea or immediately following entry of the forfeiture order,

whichever applies.

## Financial Statement

18. Defendant agrees to truthfully complete under penalty of perjury, within thirty (30) days of the execution of this plea agreement, a financial statement on a form provided by the United States Attorney's Office and to update the statement within seven (7) days of any material change. Defendant also agrees to make full disclosure to the United States Probation Office of all current and anticipated assets in which Defendant has an interest both before sentencing and again before termination of supervised release or probation, with such disclosures to be shared with the United States Attorney's Office.

19. Defendant further agrees not to dispose or transfer any assets without the prior written permission of the United States and to authorize the release of all financial information requested by the United States, including, but not limited to, credit histories and tax returns. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's financial disclosure, including in a deposition or informal debtor exam, whether before or after sentencing.

## Complete Agreement

20. This written plea agreement, consisting of sixteen pages, including the attached addendum of Defendant and Defendant's counsel, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel.

12

Other than any written proffer agreement that may have been entered into between the United States and Defendant, this agreement supersedes any prior understandings, promises, agreements, or conditions between the United States and Defendant. No additional understandings, promises, agreements, or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

21. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at __Houston__, Texas, on __February 6th__, 2025.

_____
Defendant

Subscribed and sworn to before me on __February 6th__, 2025.

NATHAN KYLE OCHSNER, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

13

APPROVED:

Nicholas J. Ganjei
United States Attorney

By: _____
Kelly Zenón-Matos
Assistant United States Attorney
Southern District of Texas

_____
James Stafford, Esq.
Attorney for Deandre Watson

_____
Jodi Anton
Trial Attorney- Department of Justice
Violent Crime and Racketeering Section

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA

v.                                                             CRIMINAL NO. 4:23-cr-00397

DEANDRE WATSON,

Defendant.

## PLEA AGREEMENT – ADDENDUM

I have fully explained to Defendant his rights with respect to the pending Indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. I have also explained to Defendant that sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____          2/6/25
James Stafford, Esq.                        Date
Attorney for Defendant Deandre Watson

15

I have consulted with my attorney and fully understand all my rights with respect to the Indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____   2/6/25
Deandre Watson                    Date