# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**UNITED STATES OF AMERICA,**

**v.**                                                    **No. 4:23-CR-00105-2**

**ALEXANDRA ELIZABETH NICKS,**
      **Defendant**

## OPPOSED MOTION TO SUPPRESS

Defendant Alexandra Nicks moves to suppress all evidence obtained from the search of an iPhone 12 seized from her possession after her arrest. The warrant authorized a sweeping search based on speculation, not particularized probable cause, and the Government did not begin accessing the device until years after the warrant issued. Because the search exceeded what the Fourth Amendment permits, Ms. Nicks respectfully asks the Court to suppress the evidence and all fruits of the search.

Introduction

This motion proceeds in two parts. First, the warrant lacked a particularized factual nexus between the alleged offenses and Ms. Nicks's iPhone 12, making it a general digital search unsupported by probable cause. Second, the Government's nearly four-year delay in beginning the search rendered any 2021 probable cause stale and made the execution of the warrant unreasonable.

On November 10, 2021, Anthony Turner, the lead case agent in this case, swore out a search warrant for the iPhone 12 that was in Ms. Nicks's possession after her arrest in

state court, and District Judge Frank Aguilar signed the warrant that same day. On November 15, 2021, the cellphone request was submitted. The Government did not complete a search of the phone that day, that month, or that year. Instead, three years, ten months, and 21 days passed before law enforcement made its initial attempt to access the device on October 1, 2025. Access resumed on January 15, 2026; the phone was unlocked, and a filesystem extraction was completed on January 16, 2026. Copies of the warrant and extraction report are attached as Exhibits A and B. The first trial commenced on January 12, 2026, and ended when the jury was unable to reach a unanimous verdict.

The warrant identified five asserted bases for searching the phone, none of which supplied a particularized factual nexus between the device and evidence of a specific offense:

1) that the phone "likely contains [information] that may be useful in reducing the fugitive co-defendant Shaquile Richards to capture";
2) that the phone would "contain information and communications tending to show she is enacting her previously stated plan and further directing the activities of the '103' gang";
3) that the device would contain "relevant information about Defendant's social media and other accounts";
4) that the device would contain photos, data, and communications "relevant to the issue of punishment in the future trial(s) of current pending felony charges against the Defendant"; and
5) that the warrant would allow investigators to "obtain further evidence to both aid in prosecution of existing charges as well as further the long term gang investigation."

Arguments and Authorities

The evidence should be suppressed for two independent reasons. First, the warrant affidavit was bare bones: it relied on generalized assumptions about what a phone might contain without supplying facts showing a fair probability that evidence of a crime would

be found on this particular device. Second, even if probable cause existed in November 2021, the Government violated the Fourth Amendment by failing to conduct the review within a reasonable time.

First Ground

The Supreme Court recently reaffirmed that a magistrate may issue a warrant only when the affidavit establishes a fair probability that contraband or evidence of a crime will be found in the place to be searched. *Chatrie v. United States,* 609 U.S. *17, ___ S. Ct. ___ (2026). That requirement has special force with cell phones, which hold vast quantities of intensely personal information. A warrant for a phone therefore must be carefully tied to specific facts and specific evidence; it may not become a broad permission slip to rummage through a person's digital life. The particularity requirement demands that the search be carefully tailored to its justifications. *Maryland v. Garrison,* 480 U.S. 79, 84, 107 S. Ct. 1013 (1987). The warrant here crossed that line. It authorized an exploratory search based on broad investigative hopes rather than particularized probable cause.

The affidavit did not establish probable cause to search the phone. Its central assertion was that the device "likely" "may" contain information useful to locating Richards. That wording matters. "Likely" and "may" do not identify facts; they reveal uncertainty. The affidavit did not state that Ms. Nicks had recently communicated with Richards on that phone, that investigators had traced relevant communications to that device, or that any witness had identified the phone as a tool used in the alleged offense. Without those connective facts, the affidavit offered only conjecture layered on possibility. The remaining asserted bases suffer from the same defect. The affidavit did not connect

alleged gang communications, social media activity, account information, photographs, data, or punishment-related material to Ms. Nicks's iPhone 12 through particular facts. It did not explain why evidence that she was supposedly directing others would probably be found on that device several years after the shooting of October 17, 2017. Ms. Nicks was charged in state court with engaging in organized criminal activity and directing the activities of a street gang on February 6, 2020, Exhibit C & D. There was no evidence presented in the warrant that even indicated over 27 month later she was still engaging in this conduct despite being charged and on bond. The warrant alludes that she violated bond conditions by having contact with other gang members by being at a concert, but it does not provide any evidence that that contact was more than being in the same place or that the contact consisted of directing the activities of any person. It did not identify a relevant account, message, date range, contact, platform, photograph, or communication tied to the phone. And it did not limit the search to evidence of a particular offense. Instead, it invoked broad goals—punishment evidence, prosecution of existing charges, and a long-term gang investigation. Those are investigative ambitions, not probable cause. The Fourth Amendment requires more before the Government may search the contents of a cell phone.

Second Ground

The Government acted in bad faith by executing the warrant 46 months after the warrant was obtained. While the Fourth Amendment does not require a specific timeframe for a search, law enforcement must execute the warrant in a reasonable manner. *United States v. Jarman*, 847 F.3d 259, 266 (5th Cir. 2017) Federal Rule of Criminal Procedure 41(e)(2)(B) permits officers to seize electronic media and later review it consistent with

the warrant. But the rule does not suspend the Fourth Amendment or allow the Government to rely forever on old probable cause. *See United States v. Metter*, 860 F.Supp.2d 205 (EDNY 2012). The Fifth Circuit in *Jarman* found the search warrant was reasonably executed when the government completed its privilege review in eight months and within 23 months had completed its entire review of the evidence. *Jarman*, 847 F.3d at 267. The Fifth Circuit differentiated the result in *Metter* where the evidence had been seized and 15 months after the warrant was executed no plans had been made to begin review of the data. *Id.* This case is more egregious than the 15 month in *Metter* with a delay three times as long.

It is not reasonable to execute a search warrant when the facts used to support the warrant have gone stale by the time the Government began to process the phone in late 2025 and January 2026. No legitimate reason for that delay has been provided. A warrant cannot serve as a years-old license to search digital data after the factual basis for the search has expired. The multi-year delay matters because the warrant's stated reasons were tied to circumstances existing in 2021, not to a search conducted years later.

By the time access to the phone began, Shaquille Richards had been in federal custody for more than two years, beginning in March 2023 in this pending case. A search conducted in 2025 or 2026 could not assist in locating a fugitive who had already been captured. And if the Government truly believed the phone contained evidence that Ms. Nicks was directing the activities of a street gang, or that the phone would aid a long-term gang investigation aimed at ending gang violence, then its multi-year delay in accessing that information makes little sense. Nor did the Government make any fresh showing that

evidence described in the 2021 affidavit would probably remain on the device years later. If the Government believed the phone still contained accessible evidence of a crime after such an extraordinary delay, it should have returned to a magistrate and made that showing. It did not. The delayed search therefore lacked a live connection to the warrant's asserted purposes and was not reasonable in its execution.

The combined effect is constitutionally significant. The warrant began as a broad request to search a cell phone without a particularized factual nexus, and it was then executed only after the principal justification for the search had disappeared. The Government cannot cure a bare-bones affidavit with the passage of time; delay only makes the defect worse. Suppression is therefore required to enforce the Fourth Amendment's limits on general searches and to prevent the Government from unreasonably using an old warrant as an open-ended authorization to search digital information. Furthermore, by waiting years to act, and by searching only after the original fugitive-location rationale had vanished, the Government forfeited any claim that the search was reasonable under the Fourth Amendment and due process principles.

WHEREFORE, PREMISES CONSIDERED, Defendant Alexandra Nicks respectfully requests that the Court suppress all evidence obtained from the search of the iPhone 12, together with any fruits of that search, and grant any further relief to which she may be justly entitled.

Respectfully submitted,

*/s/ Judith Shields*

Judith Shields
SDTX No. 424027
Texas State Bar No. 00793271
Attorney for Alexandra Nicks
10655 Six Pines. Suite 230
The Woodlands, Texas 77380
Phone: 936-703-5002
Fax: 877-900-2822
JudithShieldsAttorney@gmail.com

## CERTIFICATION OF CONFERENCE

I communicated with AUSA Kelly Zenon on July 2, 2026. She advises she opposes the motion.

*/s/ Judith Shields*
Judith Shields

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing motion with the exhibits was delivered to all counsel of record on July 2, 2026, via ECF. A copy of the motion was provided to AUSA Kelly Zenon who opposes the motion.

*/s/ Judith Shields*
Judith Shields



# Harris County District Attorney's Office
## TECHNICAL SERVICES UNIT
## DIGITAL FORENSICS INVESTIGATIONS UNIT
### SUBMISSION FORM



CONTROL NUMBER: 21-113996

| | |
|---|---|
| Date of request: 11/10/2021   11·15·21 | Requesting Agency: Houston Police Department |
| Agency Case Number: 015768920 | Harris County Cause Number: 1663543 & 1663544 |
| Requestor's Name: Sgt. Anthony Turner | Contact phone number: 832-248-8224 |
| Contact email address: Anthony.Turner@houstonpolice.org | Address of seizure: 1201 Franklin St. Houston TX 77002 |
| Requesting Assistant District Attorney Name: William Cowardin | |

| Search Authority: | ✓ Search Warrant | | Other: |
|---|---|---|---|
| | Consent | | |

| Target Last Name: Nicks | Target First Name: Alexandra  SPN: 02567683. | Target DOB: 12/2/1993 |
|---|---|---|

Offense: Investigation

**Brief Synopsis of Case:**

Defendant is a leader in the 103 criminal street gang. The underlying case is Directing a Street Gang related to her leadership role in a 2017 gang murder. On November 9, her bonds were revoked for having continued contact with gang members. We believe the phone will contain further evidence of gang involvement and potentially assist with the location and arrest of her Co-Defendant Shaquille Richards who is a fugitive who shot his girlfriend on 10/26/2021.

**Evidence Submitted (Include make model and serial):**

black and silver iPhone Pro with a cracked back cover. Photos are attached. IMEI & Serial # are unknown and were not externally visible. IMEI: 351732278133296.
DA Tag # 21067

**Password or Pin Number (if applicable):** Unknown.

**Keywords or other specific search terms (ie. Names, account numbers, email addresses etc.) that would be helpful during analysis**

| Has this device been viewed or examined by anyone prior to submission? No | If yes, explain below |
|---|---|

**Type of data you are requesting to recover. Please be VERY specific; ie Word Documents, Graphics Files, Spreadsheets, Child Pornography, etc.)**

Contacts, communications, images, or other content tending to establish continued gang related activity.

## Evidence will NOT be accepted without a copy of the legal authority

Person Submitting Evidence

Person Receiving Evidence

11/15/21 @ 1:45pm

DEFENDANT'S EXHIBIT
A
4:23-cr-105-2

DFI SUBMISSION FORM REVISED 02/2017

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| COUNTY OF HARRIS | § | **AFFIDAVIT** |
| | § | |

I, Anthony Turner, a Certified Peace Officer employed by Houston Police Department, and who is currently assigned to the Gang Division, with an address of 1200 Travis Street in Houston, Harris County, Texas hereafter to be known as the affiant, do solemnly swear that I have reason to believe and do believe that within:

A cellular phone, more particularly described as a black and silver iPhone Pro, with a cracked back cover, pictured below:



which was found in the possession of Alexandra Nicks, hereafter known as the Defendant, after being arrested following the revocation of the Defendant's bonds in Cause Numbers 1663543 & 1663544 , which is currently in the possession of Attorney Chris Flood, whose office is located at 914 Preston St., Ste. 800, Houston, Harris County, TX 77002.

The subject device is owned by and was found in the possession of the Defendant. Affiant believes that within the device may be evidence relating to the Defendant's membership and leadership status in a criminal street gang, specifically, "103" or "100% Third Ward," as well as evidence relating to the location of wanted fugitive and Co-Defendant in the Defendant's cases, Shaquille Richards, and evidence relevant to the issue of punishment in Cause No's 1663543 & 1663544, including, but not limited to: photographs/videos; text or multimedia messages (SMS and MMS); any call history or call logs; any e-mails, instant messaging, or other forms of communication of which said phone is capable; Internet browsing history; any stored Global Positioning System (GPS) data; contact information including e-mail addresses, physical addresses, mailing addresses, and phone numbers; any voicemail messages contained on said phone; any recordings contained on said phone; any social media posts or messaging,

and any images associated thereto, including but not limited to that on Facebook, Twitter, and Instagram; any documents and/or evidence showing the identity of ownership and identity of the users of said described item(s); computer files or fragments of files; all tracking data and way points; CD-ROM's, CD's, DVD's, thumb drives, SD Cards, flash drives or any other equipment attached or embedded in the above described device that can be used to store electronic data, metadata, and temporary files.

Your Affiant has probable cause to believe for said belief by reason of the following facts:

Your Affiant has been actively investigating the ongoing criminal street gang activity and conflict in the southeast and third ward areas of Houston, TX over the last several years. Affiant has learned through reviewing multiple Houston Police Department offense reports as well as interviewing witnesses and reviewing interviews conducted by other officers, that Houston's historic 3rd Ward and South Union neighborhoods are currently associated with crime and gang activity, and that this gang presence dates back to 2011. These two areas make up approximately five square miles amongst Houston's 627 total square miles yet account for the majority of documented gang members in the Houston metropolitan area. Two large rival gangs hold the majority in these two neighborhoods, specifically, in 3rd Ward is the 103 Gang, which stands for 100% 3rd Ward and in South Union the Young Scott Block (YSB) / Free Money Gangs, originating between Yellowstone Blvd and Scott St.

Due to these gang members operating in such a small geographic area they also each associate with a number of other gangs in the immediate and surrounding areas forming alliances which has created a large and ever transforming group of criminals that ultimately leads to a notable amount of gang related gun violence in these communities. Through the course of affiants investigation and upon speaking to other gang investigators Alexandra Nicks, hereinafter referred to as the Defendant, has been shown to have not only be active but an influential role in the 103 gang and ongoing crimes as well as the ongoing distribution of narcotics. Affiant has learned this through the following:

**January 24, 2018 Gang Intelligence Interview**
Affiant learned through speaking with Officer Kevin Bowen of the Gang Division as well as reading transcript of his in custody interview of the Defendant that the defendant through self-admission is a member of the 103 criminal street gang. In this recorded interview, Defendant states she is an OG with 103. Affiant knows through training and multiple gang investigations that "OG" is short for Original Gangster who are seen to be the elders or leaders to the younger lower ranking members among the gang. Affiant heard the Defendant acknowledge the ongoing war and conflict between the gangs saying that YSB and Free Money Gang members are hunting 103 members "so we are only trying to protect ourselves." This statement in full context is not only her admission to being a member of 103 but also to carrying weapons and perpetuating the conflict through violence.

During the interview, Defendant goes on to talk about her rap career and the impact it has and is having on the violence. Defendant states that after the release of her Shootston video (a rap video on YouTube with confrontational lyrics paired with a large number of gang members with high-powered weapons) the violence between the gangs really took off. Defendant states she was on parole when she shot that video and her parole officer said she should have been violated. Defendant goes on to state that it was during her performance of that song on July 4, 2016, when 103 member Daquarius Tucker was shot and killed. Affiant knows that 103 member Daquarius Tucker was killed in retaliation for his involvement in the murder of 15-year-old YSB gang member Zaveon Williams documented in HPD case #53333-15. Defendant states during the interview, some young 103 Gang members woke up in the morning and said they were going to go commit a retaliatory gang murder or drive by shooting. Defendant confirmed these members are as young as 15, 16, or 17yrs old. Defendant admitted that her songs started the retaliatory gang murders and they heavily influenced the violence that is still going on today. Defendant stated that 3rd Ward and other Southside Houston neighborhoods have turned into a mini-Chicago, referring to the high amount of gang related gun violence and homicide in that region.

Defendant goes on to say that there is a point system in place with these murders and that she is currently worth 100 points due to her gang status. Defendant stated that it is this status that allows her to do things like order the younger members to not post their location on social media. Defendant goes on to state if she gets shot by a rival gang, she is not going to just let it go, she is going to attempt to commit a retaliatory gang murder. Defendant states she is a true gangster.

Defendant proceeds to go through several players in the gang war on both sides and demonstrates her full knowledge of the history and on-going activity throughout. Affiant found Defendant to appear not only boastful and proud of her gang and status within but also a true threat to the city of Houston and its innocent citizens in these areas. Affiant knows through training and experience that gang violence involving firearms often endangers the public when bystanders and their homes are struck by stray bullets. Throughout the course of this long term organizational investigation into 103 and rival gangs Affiant has found the use of cellular devices to be consistent in the planning, execution and sometimes cover up that follows these gang crimes. Case evidence from the Defendant's social media has shown her involvement in all of those stages and Affiant believes this device will contain further evidence relating to these crimes as well.

**October 16, 2017 gang related murder**
Defendant has been the subject of an ongoing investigation by Affiant and other investigators relating to the October 16, 2017 murder of Sam Johnson and shooting of Walter Fields. Affiant was on call on October 16, 2017 and was assigned to investigate the homicide of Sam Johnson. Affiant made the scene of the shooting at 6800 London Drive in Houston, Harris County, Texas, and observed a black male who was deceased at that location, and later identified the decedent as Sam Johnson. Affiant also spoke to Walter Fields, who told Affiant

that he was the target of the shooting, because he was a member of the "YSB" criminal street gang. Walter Fields told Affiant that he knew it was either members of the "103" or "Early Boys" criminal street gangs that committed the shooting. Affiant viewed video surveillance recovered from the Cushingberry Motel located at 4510 Idaho Street which had a camera facing directly towards the scene of the murder. Affiant observed that the camera showed four black males, later identified as Marquis Erskin, Deandre Watson, Mertroy Harris, and Marcus Christopher exit a blue passenger vehicle armed with an AR-15 and an AK-47 type rifles, as well as a pistol with a drum magazine, which they discharged repeatedly in the direction of Walter Fields and Sam Johnson. Affiant conducted research and found that the vehicle operated by the suspects was a grey 2006 Mazda CX-7, which had been reported stolen on October 10, 2017, during an Aggravated Robbery by Complainant Andeme Otogo in Houston Police Department report no. 1277501-17 written by Officer L. Derise of the Houston Police Department. Affiant further observed the video showed three of the four males them force a woman and her young child from a brown van which was located near the scene of the murder and drive away in the van, while the fourth male flees on foot. Affiant was informed by Officer G. Thornberg and Officer G. Lawson that they had detained Mertroy Harris at a gas station located at 6626 Cullen Blvd. shortly after the murder. Affiant interviewed Mertroy Harris, who Affiant recognized as the black male that fled the scene of the murder on foot, and Harris admitted being present during the shooting. During the investigation, Affiant observed that a TDCJ ID depicting Marquis Erskin was located inside of the vehicle the four suspects initially used leading up to the shooting. Affiant also noted that social media photographs taken in close proximity to the shooting show Marquis Erskin wearing a backpack which was also located in the stolen vehicle used by the four suspects. Affiant contacted peace officers who were familiar with"103" gang members to see if they could assist in developing the identity of the other males involved in the shooting. Affiant spoke to Officer Barton Nabors of Houston Police Department, Gang murder squad, who told Affiant that he could identify the smaller male wearing a distinct ponytail hairstyle during the shooting at Deandre Watson, a "103" gang member. Affiant spoke to Officer W. Demby of Houston Independent School District Police Department, who told Affiant that the larger, heavyset male wearing a grey hoody was Marcus Christopher, another documented "103" gang member.

**Communications linking Defendant to Directing the Murder**

Affiant reviewed recorded phone calls between Alexandra Nicks and Shaquille Richards while Richards was incarcerated in the Harris County Jail leading up to the date of the murder. Affiant listened to recorded phone calls from October 11, 2017 from Richards to Defendant where Defendant tells Richards she ordered Deandre Watson to get some guns before the end of the day. Defendant goes on to say that told the other gang members that everyone needs to play their position and perform their role within the gang. Affiant reviewed a phone call between Richards and Defendant from October 15, 2017 in which Defendant told Richards that after she signed a rap contract, they would retire and pay younger members of the gang to do shootings with the rap money because they are the key players in the gang, and that 103 would not function without them. Affiant found Defendant to go on to explain that October 15, 2017 was the anniversary of the death of "Little Quintin,"

referring to the gang related murder of Quintin Brown documented in HPD case 1351467-16, originally written by Houston Police Department Officer N. Okusanya, and that she had ordered the younger members of the gang that they needed to kill a YSB gang member before midnight so that Richards could see it on the news. Defendant continues to tell Richards that Deandre Watson is ready to go and do drive by shootings. Defendant goes on to say that she isn't down to just shoot at windows, referring to Deadly Conduct type shootings directed at a residence rather than a human target, and later tells Richards that "Nike" or Kyntrell Norris, another person that Affiant knows to be an Early boy gang member, had picked up Deandre Watson.

Affiant reviewed Instagram direct messages which were obtained via search warrant between various 103 gang members sent on the days leading up to and following the murder. Affiant identified the Instagram accounts belonging to Earlyboy and various "103" gang members including Defendant: "ombbloodbath," Deandre Watson: "problemgang_dre," Marquis Erskin: "cocaine_bangzzz," Kyntrell Norris: "rudeboynike," and Marcus Christopher: "thirdward_moe." Affiant confirmed that these accounts were associated correctly, as each set of records also contained numerous photographs which clearly establish the operator of each account. Additionally, Deandre Watson confirmed in a recorded interview that his account was in fact, "problemgang_dre." Affiant reviewed Instagram messages sent on October 14, 2017, in which Erskin asks Norris to provide him with a stolen car, because they are hard to get, and Norris responds by saying that he has already provided one to Deandre Watson. On October 15, 2017, Erskin sends Instagram messages to Marcus Christopher and Devonte Lockett, another "103" gang member who had recently been shot and he says that they are going to murder a rival gang member that day. Affiant reviewed Instagram messages also sent on October 15, 2017 in which the Defendant asks where Erskin and Deon Henderson, another "103" gang member are, because they have the stolen car, which they refer to as a "whip" and firearms, which they refer to as "sticks." Affiant saw that the Erskin responded to the message saying he was "suited up" or ready to go and do a shooting. Affiant reviewed Instagram messages from October 16, 2017 sent approximately 1-2 hours prior to the murder in which Defendant says that she is going to call Deandre Watson, because he has the stolen car, and that they didn't go the night before because Watson fell asleep.

Affiant has reviewed recorded phone calls in which the Defendant repeatedly indicates that her plan for the future of the leadership in the "103" criminal street gang is to gain access to monetary resources by advancing her rap career, and to subsequently use her access to money to further direct younger members of the "103" gang to engage in drive by shootings and other acts of gang related violence. Affiant knows from reviewing Houston Police Department reports that the Third Ward neighborhood continues to be affected by the violent conflict between "103" and "YSB" criminal street gangs.

### July 23, 2021 Bond Violation Incident

During Affiant's ongoing investigation of the Defendant's activities as they relate to her continuing participation in the "103" criminal street gang, Affiant reviewed Houston Police Department Incident Report

994167-21 which was originally authored by Eric Maldonado, a certified peace officer employed by the Houston Police Department. Maldonado wrote that on July 23, 2021 he responded to a call from HPD Gangs Officer Jonathan Hunt who had seen the Defendant arrive at White Oak Music Hall, located at 2915 North Main St. Houston, Harris County, Texas with Larry Smith, a person Officer Hunt knew was a documented "Problem Gang" member who was wanted for several Aggravated Robbery warrants at that time. Officer Hunt wrote that he observed Larry Smith and the Defendant arrive at White Oak Music Hall, and he saw the Defendant let Larry Smith into the music venue through a VIP entrance door in the back of the venue. Affiant read that Officer Hunt observed Larry Smith subsequently admit Kyntrell Norris and Jarius Crooks, individuals Officer Hunt knows to be documented "Early Boys" gang members, through the VIP entrance. Officer Hunt wrote that he saw Larry Smith, Kyntrell Norris, Jarius Crooks, the Defendant and several females exit the music venue and wait next to a car belonging to Jeremy Long, an individual he knew to be a documented "Gas Gang" member. Hunt and Maldonado both wrote that as the marked units approached and attempted to arrest Larry Smith on the outstanding felony warrants, the Defendant, fugitive Larry Smith, Kyntrell Norris, Jarius Crooks, and two individuals later identified as Dedrick Sasser and Nichole Chapa enter a grey Dodge Charger, which began driving away from the Music Venue. Maldonado wrote that he initiated a felony traffic stop on the Charger and he and other officers at the scene detained the occupants of the vehicle. Maldonado also wrote that during a probable cause search of the vehicle, he and William Keefe, also a certified peace officer employed by the Houston Police Department, located a firearm underneath the driver's seat of the vehicle and in a white purse believed to belong to Defendant Nichole Chapa. Based on the information contained in the report, Affiant knows that only Larry Smith and Nichole Chapa were arrested on July 23, 2021 based on the felony warrants for Smith and a new UCW charge against Chapa. However, Affiant knows that Defendant Alexandra Nicks was on felony bond for Directing the Activities of a Criminal Street Gang in Cause No. 1663543 & Engaging in Organized Criminal Activity in Cause No. 1663544 on July 23, 202, and that as of February 10, 2021, the Defendant was prohibited from having any contact with gang members as a condition of her bond in those cases.

Affiant spoke to Chief Assistant District Attorney William Cowardin, an attorney in good standing with the State Bar of Texas and a person Affiant has found to be credible and reliable, about a hearing relating to the revocation of the Defendant's bonds in those cases as a result of her violations, primarily arising from the July 23, 2021 incident which was conducted before Judge Ramona Franklin in the 338th District Court on November 9, 2021. Chief ADA Cowardin told Affiant that following the completion of the hearing, Judge Franklin found that the Defendant had violated the conditions of her bond, and accordingly Judge Franklin raised the bonds in Cause No's 1663543 & 1663544 from $150,000 each to $500,000 each. Chief ADA Cowardin further told Affiant that following the conclusion of the hearing, Defendant Alexandra Nicks was remanded to the Custody of the Sheriff, which Affiant confirmed by reviewing copies of the court directives in each case. Chief ADA Cowardin told Affiant that when the Defendant was arrested, she was found by the bailiffs in the 338th District Court to be in possession of a black and silver iPhone Pro with a cracked back cover. ADA Cowardin provided photographs of

said phone, which are included below and incorporated into this document for all purposes.

 

Chief ADA Cowardin told Affiant that this device was taken from the Defendant's property and given to the Defendant's attorney, Chris Flood. Chief ADA Cowardin told Affiant that he informed Attorney Flood that Affiant or another peace officer would be seeking a warrant to seize the phone and have it submitted for forensic analysis in order to obtain evidence Affiant believes will be contained within the device. Affiant reviewed the entry on Attorney Chris Flood's office location maintained by the State Bar of Texas and found it to be located at 914 Preston St., Ste. 800, Houston, Harris County, Texas 77002. Affiant believes that Attorney Chris Flood will maintain possession of the device, as he has been put on notice that the device contains evidence needed for prosecution of existing cases, and investigation of new and ongoing criminal activity including the search for fugitives in related cases.

**Co-Defendant Shaquille Richards October 26, 2021 Aggravated Assault & Flight**
During the weeks immediately preceding the November 9, 2021 bond revocation hearing involving Defendant Alexandra Nicks, Affiant has been involved in an ongoing manhunt for Co-Defendant Shaquille Richards, who is similarly charged with Directing the Activities of a Criminal Street Gang in Cause No. 1663545 & Engaging in Organized Criminal Activity in Cause No. 1663546, currently pending in the 338th District Court, and who has been wanted on felony warrants in those cases since the issuance of an alias capias revoking the Defendant's surety bonds on September 29, 2021.

Affiant was notified about a new law violation documented in Houston Police Department Incident Report No. 1440981-21, which was originally authored by Roberto Botello, a certified peace officer currently employed by the Houston Police Department, following the incident on October 26, 2021. Affiant read in Botello's report that Botello was called out to a shooting investigation on October 26, 2021 where he met with Complainant Majesty Otems, who was at Ben Taub Hospital in Harris County, Texas, where she was being treated for a gunshot wound to the back hip area. Affiant read in Botello's report that Majesty Otems told Botello that she and Co-Defendant Shaquille Richards had been dating for several months before Otems met Richards at the

residence where he was living at 4335 Richmeadow Dr., Houston, Harris County, Texas on October 26, 2021. Botello wrote that Otems told him that she and the Defendant were arguing outside of his residence when she became angry at Richards and she hit him with a stick. Botello wrote that Otems said the Defendant then struck her in the head, and continued to be aggressive towards her, causing her to flee from him. Botello wrote that Otems said Richards drew a pistol from his waistband and shot her from behind in her left hip area. Affiant knows from training and experience that gunshot wounds typically cause serious bodily injury and have a high risk of death if immediate medical treatment is not provided.

Since the October 26, 2021 Aggravated Assault incident, Affiant has been attempting to locate Shaquille Richards using various methods but so far has been unsuccessful. Affiant believes that the Apple iPhone that was found in Alexandra Nicks' possession likely contains evidence that may be useful in reducing the fugitive Co-Defendant Shaquille Richards to capture. Affiant knows from previous experience in the cases involving "103" gang members that it is common for individuals in these gangs to pool resources to post bonds or avoid arrest. Affiant believes that the close coordination between Defendant Alexandra Nicks and Co-Defendant Shaquille Richards that has been demonstrated during the 2017 organized crime cases and social media interactions between Richards & Nicks since then, that Nicks and Richards are likely in contact, and that these contacts will likely be contained within the cell phone found on Nicks's person when she was arrested following the revocation of her bond.

Affiant further believes that the cellular phone recovered from the Defendant will contain information and communications tending to show that she is enacting her previously stated plan and further directing the activities of the "103" gang. Affiant believes that the July 23, 2021 bond violation is indicative of the Defendant's further involvement in gang activities, and Affiant believes that evidence establishing this will be located on her cell phone. Affiant has learned from training and experience, and has observed directly through this investigation and others that Gang members from "103" routinely use electronic communications to conduct, plan, and organize gang activities. Affiant knows that "103" gang members are known to use stolen vehicles; talk, text and use other messaging applications to communicate between vehicles, and use multiple individuals to assist in carrying out their crimes. Furthermore, Affiant believes that information and stored electronic communications stored on the device will contain relevant information about the Defendant's operation of social media and other accounts, and will contain data and communications tending to confirm her identity as the owner of the device, and her ongoing role in directing the activities of the "103" gang. Finally, Affiant believes that the device will contain other gang or crime related photos, data, and stored electronic communications which will be relevant to the issue of punishment in the future trial(s) of currently pending felony charges against the Defendant. Affiant thereby believes by obtaining a Search Warrant for Alexandra Nicks cellular phone investigators will obtain further evidence to both aid in prosecution of existing charges as well as further the long term gang investigation and ultimate goal of ending the ongoing gang violence now plaguing our city's southeast side.

WHEREFORE, PREMISE CONSIDERED, Affiant respectfully requests that a warrant issue authorizing your Affiant and any other peace officer in Harris County, Texas, to seize and search the contents of:

The cellular phone, which is more particularly described as a black and silver iPhone Pro with a cracked back cover, pictured below:

 

which was found in the possession of Alexandra Nicks, hereafter known as the Defendant, after being arrested following the revocation of the Defendant's bonds in Cause Numbers 1663543 & 1663544, which is currently in the possession of Attorney Chris Flood, whose office is located at 914 Preston St., Ste. 800, Houston, Harris County, Texas 77002 who is expected to maintain possession of the phone until the Search Warrant is executed, in Houston, Harris County, Texas.

_____
AFFIANT

Sworn to and Subscribed before me on this the _10_ day of _Nov._ , A.D. 20_21_

_____
(Signature)

_F R A N K      A G U I L A R_
(Printed name)
MAGISTRATE
2 2 8 th District Court
Harris County, Texas

THE STATE OF TEXAS §

COUNTY OF HARRIS §

RETURN AND INVENTORY

The undersigned, being a peace officer under the laws of the State of Texas, certifies that the foregoing warrant came to hand on the day it was issued and that it was executed on the ___ day of _____ A.D., _____, by making the search directed therein and seizing during the search the following described property:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____
OFFICER EXECUTING PROCESS

# GrayKey Progress Report



## Evidence ID: 21-113996 Tag 21067

## Examiner Name: Inv. J. Staton

GrayKey Serial Number: 16ffacd5d4410b1b
GrayKey Software: OS Version: 1.27.4.33941804, App Bundle: 7.4.0.34201334
Report generation time: 2026-01-17 01:54:09 UTC

## Target Device Information

| | |
|---|---|
| Device Name | bloods iPhone |
| Software Version | 14.7.1 [18G82] |
| Model | iPhone 12 Pro Max [iPhone13,4 D54pAP] |
| Unique Device ID (UDID) | 00008101-000258A41A51001E |
| Serial Number | G0NFFQKP0D41 |
| Unique Chip ID (ECID) | 660411792818206 |
| WiFi MAC Address | 28:c7:09:16:d9:f2 |
| Bluetooth MAC Address | 28:c7:09:09:2b:74 |
| Phone Number | 13464203254 |
| IMEI | 351732278133296 |
| IMEI(2) | 351732278079101 |
| Data Partition Size | 115.24GB (115236294656 bytes) |
| Last Lock State | Before First Unlock |
| GrayKey Agent Version | 7.4.0.34201334 |
| Backup State | iCloud Backup, Last Backup Date: 2021-10-21 13:50:40 UTC |
| Owner Name | Nicks Business |
| Accounts | bigbloodbath103@icloud.com, alexnbusinessonly@gmail.com |
| Passcode (or unlock mechanism) | 1515 |

## Event Log

2025-10-01 15:38:31 UTC: Initial access started.
2025-10-01 15:56:17 UTC: Initial access succeeded.
2025-10-01 15:56:18 UTC: On-device agent started. Device Time: 2023-06-05 07:09:20 -05:00
   Device Boot Time: 2023-06-05 06:50:52 -05:00   OS Version: 1.27.0.32901420   AL Version: 7.0.0.33162004
2025-10-01 15:56:18 UTC: Connected to on-device agent.
2025-10-01 15:56:27 UTC: Progress report generated.
2025-10-01 15:56:29 UTC: Passcode bruteforce started.
2025-10-01 15:56:44 UTC: Progress report generated.
2025-10-01 15:57:41 UTC: Progress report generated.
2025-10-01 15:58:00 UTC: Progress report generated.
2026-01-15 15:16:23 UTC: Initial access started.
2026-01-15 15:41:18 UTC: Initial access succeeded.
2026-01-15 15:41:20 UTC: On-device agent started. Device Time: 2023-09-19 06:54:38 -05:00
   Device Boot Time: 2023-09-19 06:28:43 -05:00   OS Version: 1.27.4.33941804   AL Version: 7.4.0.34201334
2026-01-15 15:41:20 UTC: Connected to on-device agent.



DEFENDANT'S
EXHIBIT
B
4:23-cr-105-2

GRAYSHIFT

2026-01-15 15:41:30 UTC: Progress report generated.
2026-01-15 15:41:47 UTC: Progress report generated.
2026-01-15 15:42:13 UTC: Passcode bruteforce started.
2026-01-15 15:49:04 UTC: Progress report generated.
2026-01-15 15:49:05 UTC: Passcode bruteforce started.
2026-01-15 15:49:05 UTC: Disconnected from on-device agent.
2026-01-15 15:49:27 UTC: Progress report generated.
2026-01-15 16:16:13 UTC: Progress report generated.
2026-01-15 16:16:29 UTC: Progress report generated.
2026-01-16 12:29:52 UTC: Passcode bruteforce complete. Result: Success
2026-01-16 19:41:53 UTC: Initial access succeeded.
2026-01-16 19:41:54 UTC: Connected to on-device agent.
2026-01-16 19:41:59 UTC: Passcode suggestions added.
2026-01-16 19:41:59 UTC: Manual data extraction requested.
2026-01-16 19:42:03 UTC: Target device unlocked.
2026-01-16 19:42:03 UTC: Keychain extraction started.
2026-01-16 19:42:03 UTC: Keychain extraction complete. Result: Success
2026-01-16 19:42:03 UTC: Filesystem extraction started.
2026-01-16 19:42:06 UTC: Progress report generated.
2026-01-16 19:42:43 UTC: Progress report generated.
2026-01-16 22:28:29 UTC: Filesystem extraction complete. Result: Success
2026-01-16 22:28:34 UTC: On-device agent uninstalled.
2026-01-16 22:28:41 UTC: Progress report generated.
2026-01-16 22:33:15 UTC: Progress report generated.
2026-01-17 01:53:47 UTC: Progress report generated.
2026-01-17 01:53:56 UTC: Progress report generated.
2026-01-17 01:54:09 UTC: Progress report generated.

## Extraction Result Summary

| Full Filesystem | 2026-01-16 22:28:27.561001 UTC |
|---|---|
| Extraction size | 149.35GB (149351652444 bytes) |
| SHA256 | 06fbc9c3c101f5dccee94d1c82ac676b2e75c4a0a2213b28aa98cc274ec60c08 |
| MD5 | e354a2a9e097f10030fe9825fe595ac7 |

| Keychain | 52 Keys, 15 Certificates, 150 Internet passwords, 629 General passwords |
|---|---|
| SHA256 | 1353e2d0887a96cb75316b88f2ffee7eefe43b957bc5645cc298873a3038d6d6 |
| MD5 | 9a0b225e4e6b3438796b60c1dd22b1b3 |

THE STATE OF TEXAS
VS.
**ALEXANDRA NICKS**

SPN: **02567683**
DOB: **B F 12/2/1993**
DATE PREPARED: **2/5/2020**

D.A. LOG NUMBER: **2613911**
CJIS TRACKING NO.:
BY: **WC DA NO: 2600283**
AGENCY: **HPD**
O/R NO: **015768920**
ARREST DATE: **TO BE**

NCIC CODE: **210125**          RELATED CASES: **RICHARDS,SHAQUILLE ONEAL**

FELONY CHARGE: **Engaging in Organized Criminal Activity**

CAUSE NO: **1663544**
HARRIS COUNTY DISTRICT COURT NO: **338** /
FIRST SETTING DATE:

COURT ORDERED BAIL: **$150,000**
PRIOR CAUSE NO:
CHARGE SEQ NUM: **1**

**IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:**

The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, **ALEXANDRA NICKS,** hereafter styled the Defendant, heretofore on or about October 2, 2017, continuing through October 19, 2017, pursuant to a single scheme and continuing course of conduct, did then and there unlawfully, as a member of a criminal street gang, namely "100% Third Ward" and "103" intentionally and knowingly commit the offense of Murder, in that he 1) did unlawfully intend to cause serious bodily injury to Walter Fields, and did cause the death of Sam Johnson by intentionally and knowingly committing an act clearly dangerous to human life, namely shooting a firearm at Sam Johnson and Walter Fields and 2) intentionally and knowingly cause the death of Sam Johnson by shooting a firearm at Sam Johnson.

It is further presented that in Harris County, Texas, **ALEXANDRA NICKS,** hereafter styled the Defendant, heretofore on or about October 2, 2017, continuing through October 19, 2017, pursuant to a single scheme and continuing course of conduct, as a member of a criminal street gang, namely "100% Third Ward" and "103" did then and there intentionally and knowingly conspire to commit the offense of Murder, and the Defendant agreed with members of the aforesaid street gang to engage in conduct constituting said offense, and pursuant to such agreement the Defendant performed the following overt acts, to-wit: on or about October 2, 2017, continuing through October 19, 2017, the Defendant encouraged and solicited other members of the "100% Third Ward" and "103" criminal street gang to shoot and kill members of the "Young Scott Block" criminal street gang.

Before the commission of the offense alleged above, on May 3, 2013, in Cause No. 1311508, in the 230th District Court of Harris County, Texas, the Defendant was convicted of the felony offense of Burglary of a Habitation.

**FILED**
Marilyn Burgess
District Clerk

FEB 06 2020

Time:_____12:50_____
Harris County, Texas

By_____
Deputy

**AGAINST THE PEACE AND DIGNITY OF THE STATE.**

_____  209
FOREMAN OF THE GRAND JURY

**INDICTMENT**

DEFENDANT'S
EXHIBIT
C
4:23-cr-105



I, Marilyn Burgess, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   July 2, 2026

Certified Document Number:          89306630 Total Pages: 1

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

In accordance with Texas Government Code 51.301 and 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com

THE STATE OF TEXAS
VS.
**ALEXANDRA NICKS**

SPN: 02567683
DOB: B F 12/02/1993
DATE PREPARED: 2/5/2020

D.A. LOG NUMBER: **2613911**
CJIS TRACKING NO.:
BY: WC  DA NO: 2600283
AGENCY: HPD
O/R NO: 015768920
ARREST DATE: **TO BE**

NCIC CODE: **5599 56**          RELATED CASES: **RICHARDS,SHAQUILLE ONEAL**

FELONY CHARGE: **Directing Activities of Certain Criminal Street Gang**

CAUSE NO: 1663543
HARRIS COUNTY DISTRICT COURT NO: **338**
FIRST SETTING DATE:

COURT ORDERED BAIL: **$200,000**
PRIOR CAUSE NO:
CHARGE SEQ NUM:

---

**IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:**

The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, **ALEXANDRA NICKS,** hereafter styled the Defendant, heretofore on or about October 2, 2017, continuing through October 19, 2017, pursuant to a single scheme and continuing course of conduct, did then and there unlawfully, as part of the identifiable leadership of a criminal street gang, namely, 100% Third Ward and 103, knowingly finance, direct, and supervise the commission of the offenses of Murder, Aggravated Assault, and Aggravated Robbery, by members of said criminal street gang.

It is further presented that in Harris County, Texas, **ALEXANDRA NICKS,** hereafter styled the Defendant, heretofore on or about October 2, 2017, continuing through October 19, 2017, pursuant to a single scheme and continuing course of conduct, did then and there unlawfully, as part of the identifiable leadership of a criminal street gang, namely, 100% Third Ward and 103, knowingly finance, direct, and supervise a conspiracy to commit the offenses of Murder, Aggravated Assault, and Aggravated Robbery, by members of said criminal street gang.

Before the commission of the offense alleged above, on May 3, 2013, in Cause No. 1311508, in the 230th District Court of Harris County, Texas, the Defendant was convicted of the felony offense of Burglary of a Habitation.

**FILED**
Marilyn Burgess
District Clerk

FEB 0 6 2020
12:50
Time:_____ Harris County, Texas
By_____ Deputy

Certified Document Number: 89306631 - Page 1 of 1

**AGAINST THE PEACE AND DIGNITY OF THE STATE.**

_____  209
FOREMAN OF THE GRAND JURY

**INDICTMENT**

DEFENDANT'S
EXHIBIT
D
4:23-cr-105



I, Marilyn Burgess, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   July 2, 2026

Certified Document Number:        89306631 Total Pages: 1

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 51.301 and 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**