**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIM. NO. 4:23-CR-00105** |
| | § | |
| **SHAQUILE O'NEAL RICHARDS,** | § | |
| **a/k/a Shaquille Richards, a/k/a** | § | |
| **"Shaq," a/k/a "103 Shaq," a/k/a** | § | |
| **"103shaq_isback,"** | § | |
| | § | |
| **ALEXANDRA ELIZABETH NICKS,** | § | |
| **a/k/a "Bloodbath," a/k/a "Alimo,"** | § | |
| **a/k/a "Alamo,"** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

**UNITED STATES' OPPOSED MOTION IN LIMINE TO INTRODUCE DEFENDANT'S**
**PRIOR ROBBERY CONVICTION AS A RACKETEERING ACT UNDER 18 U.S.C. §**
**1959**

The United States of America, by and through its Acting United States Attorney, John Marck, together with the undersigned Assistant United States Attorney and Department of Justice Trial Attorney, hereby gives notice that it intends to introduce at trial evidence of Defendant Shaquile O'Neal Richards' prior robbery conviction. The Government will show that this conviction is intrinsic to the offenses charged in the second superseding indictment because it completes the story of the crime by establishing the defendant's role and enterprise context; intrinsic evidence is generally admissible outside of Fed. R. Evid. Rule 404(b). Alternatively, and independently, the conviction is admissible under Fed. R. Evid. 404(b) to prove motive, identity, knowledge, plan, membership in the enterprise, and the VICAR purpose element (gaining, maintaining, or increasing position in the enterprise), and its probative value is not substantially outweighed by any danger of unfair prejudice under Fed. R. Evid. Rule 403.

### I.    *Introduction and Procedural Background*

On February 26, 2026, a federal grand jury returned a second superseding indictment against defendants Shaquile O'Neal Richards and Alexandra Elizabeth Nicks. Count One alleges that the defendants, aided and abetted by other individuals known and unknown to the grand jury, committed a murder while being part of an enterprise engaged in racketeering activity, as defined in 18 U.S.C. §§ 1959(b)(1) and 1961(1)—namely, murder, robbery, and drug trafficking. Count Two charges the defendants with using a firearm during and in relation to a murder committed in aid of racketeering and is predicated on Count One (Violence in Aid of Racketeering).

When, as in the instant indictment robbery is listed as a type of racketeering activity of the charged enterprise, both charged and uncharged robberies committed by enterprise members, including the defendants, are relevant to prove the existence of the enterprise and the defendants' roles in that enterprise. Evidence showing that the enterprise existed and that the defendants participated in an enterprise that engaged in robbery is relevant and should be deemed admissible at trial.

As to defendant Richards, the Government intends to present at trial evidence of the following events leading to his 2017 robbery conviction:

> That on September 18, 2016, at approximately 4:00 a.m., a male was robbed at gunpoint while attempting to enter his vehicle on the 3400 block of Delano Street in Houston. According to the investigation, an individual later identified as the defendant, Shaquile O'Neal Richards, approached the victim from behind, pointed a black semiautomatic pistol with an extended magazine at him, and demanded money. Richards forcibly took approximately $400 in cash; the victim's wallet; driver's license; multiple credit and debit cards; and other personal items, before fleeing on foot. Bystanders informed the victim that the suspect was known locally as "Shaq," and the victim later located photographs on social media showing Richards wearing items, including a Rolex watch stolen during the robbery. HPD detectives generated a six-person photo array, and the victim made a positive identification of Richards as the perpetrator. HPD's Gang Division classified the offense as a 103 (100% Third Ward) gang crime based on Richards's documented affiliation. An arrest warrant was

issued shortly thereafter, and Richards was arrested on November 13, 2016, following a vehicle and foot pursuit during which he was found in possession of a loaded .40-caliber handgun. On February 9, 2017, Richards was charged in Cause No. 1528979 in Harris County with Aggravated Robbery with a Deadly Weapon. Richards plead guilty and, on October 3, 2017, was sentenced to six years' imprisonment.

This robbery conviction is intrinsic to proving the existence of an enterprise engaged in racketeering activity and, alternatively, is admissible under Rule 404(b). We begin by addressing why this robbery is intrinsic to the offense charged.

## I.    DISCUSSION

### A.    Intrinsic Evidence

This robbery conviction is intrinsic because it serves to prove elements of the offenses. Because Count One charges Murder in Aid of Racketeering, the Government must prove that: (1) an enterprise existed; (2) the enterprise's activities affected interstate commerce; (3) the enterprise engaged in racketeering activity; (4) the defendant committed the charged violent crime (murder); and (5) the defendant did so for the purpose of gaining entrance to, or maintaining or increasing his position within the enterprise. *United States v. Velasquez*, 881 F.3d 314, 332 (5th Cir. 2018) (internal citations omitted); accord 18 U.S.C. § 1959(a)(1). The robbery evidence described above makes more probable the existence of an enterprise engaged in racketeering activity—namely, robbery, murder, and drug trafficking. *See* Fed. R. Evid. 401; 18 U.S.C. §§ 1959(a), (b), and 1961(1).

Pursuant to Section 1959(b)(2), the term "enterprise" includes any partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect, interstate or foreign commerce. The defendants are charged with an association-in-fact enterprise. In *Boyle v. United States*, 556 U.S. 938 (2009), the Supreme Court clarified that an association-in-fact

enterprise "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946. The Court further explained:

> Such a group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods—by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence. Nor is the statute limited to groups whose crimes are sophisticated, diverse, complex, or unique; for example, a group that does nothing but engage in extortion through old-fashioned, unsophisticated, and brutal means may fall squarely within the statute's reach.

*Id.* at 948. Simply put, the United States must present evidence that shows that *all* the defendants at some point were part of a "continuing unit that functioned with a common purpose." *Id.*[1]

Like VICAR, RICO offenses require proof of the existence of an enterprise. *See Velasquez*, 881 F.3d at 329 (citing 18 U.S.C. § 1962(c)) ("To establish a § 1962(c) violation, the Government must prove (1) the existence of an enterprise that affects interstate or foreign commerce, (2) that the defendant was employed by or associated with the enterprise, (3) that the defendant participated in the conduct of the enterprise's affairs, and (4) that the participation was through a pattern of racketeering activity."). Section 1959 defines "enterprise" essentially the same as § 1961(4).[2] The body of law concerning "enterprise" under RICO therefore applies to VICAR offenses. *United States v. Hinojosa*, 463 F. App'x 432, 449 (5th Cir. 2012)(unpublished)(citing United States v.

---

[1] "Purpose" means that the group must share the "common purpose of engaging in a course of conduct." *Boyle*, 556 U.S. at 556 (internal citation omitted).

[2] A VICAR enterprise must be engaged in racketeering activity. Unlike a RICO enterprise, it does not have to be engaged in a pattern of racketeering activity. Compare 18 U.S.C. § 1959 with 18 U.S.C. § 1962.

Cooper, 343 F. App'x 830, 831 (3d Cir. 2009)). Accordingly, in determining the existence of an enterprise, our Court of Appeals has applied the same analysis in RICO and VICAR offenses. *United States v. McClaren*, 13 F.4th 386, 403 (5th Cir. 2021) (citing Hinojosa, supra) (noting that courts interpret VICAR's definition of "enterprise" consistently with the definition applied in RICO cases). Thus, the case law analyzing the Government's ability to use charged and uncharged conduct to prove a RICO enterprise is equally applicable to proving an enterprise in a VICAR prosecution.

As to the admissibility of prior convictions, multiple Courts of Appeals have held that the Dual Sovereignty Doctrine, double jeopardy, collateral estoppel, and relevance principles are not violated by charging state offenses—on which the defendant previously was acquitted or convicted—as RICO predicate racketeering acts. *See, United States v. Portillo*, 969 F.3d 144, 177 (5th Cir. 2020); *United States v. Mahdi*, 598 F.3d 883, 890 (D.C. Cir. 2010); *United States v. Burden*, 600 F.3d 204, 228–29 (2d Cir. 2010); *United States v. Giovanelli*, 945 F.2d 479, 491–93 (2d Cir. 1991); *United States v. Coonan*, 938 F.2d 1553, 1562–63 (2d Cir. 1991); *United States v. Farmer*, 924 F.2d 647, 649–50 (7th Cir. 1991); *United States v. Pungitore*, 910 F.2d 1084 (3d Cir. 1990); *United States v. Paone*, 782 F.2d 386, 396 (2d Cir. 1986); *United States v. Licavoli*, 725 F.2d 1040, 1047 (6th Cir. 1984); *United States v. Russotti*, 717 F.2d 27, 30–32 (2d Cir. 1983); *United States v. Aleman*, 609 F.2d 298, 309 (7th Cir. 1979), cert. denied, 445 U.S. 946 (1980), superseded by statute on other grounds as recognized in Jake v. Herschberger, 173 F.3d 1059 (7th Cir. 1999); *United States v. Solano*, 605 F.2d 1141, 1142–43 (9th Cir. 1979); *United States v. Malatesta*, 583 F.2d 748, 757–58 (5th Cir. 1978); *United States v. Frumento*, 563 F.2d 1083, 1086–89 (3d Cir. 1977); *United States v. Castro*, 659 F. Supp. 2d 415, 418–19 (E.D.N.Y. 2009), aff'd, 411 F. App'x 415 (2d Cir. 2011).

Our Court of Appeals has held that even uncharged offenses arising out of the same transactions as the charged scheme are not "extrinsic" within Rule 404(b) and are admissible to prove the enterprise and the defendants' roles within it. *See United States v. Maceo*, 947 F.2d 1191, 1199 (5th Cir. 1991) (uncharged offenses from the same transactions "are not extrinsic evidence within the meaning of Rule 404(b)"), cert. denied, 503 U.S. 949 (1992). In *United States v. Krout*, the Fifth Circuit applied that principle in a Mexican Mafia RICO prosecution, upholding enterprise background evidence—including murders and attempted murders—not as character proof but as acts committed by enterprise members in furtherance of the charged RICO offenses, thereby completing the story of the organization's operations and the defendants' involvement. *See also United States v. Ali*, 493 F.3d 387, 391–92 (3d Cir. 2007) (upholding admission of uncharged misconduct in a RICO case when intrinsic to the elements of racketeering); *United States v. Matera*, 489 F.3d 115, 120 (2d Cir. 2007) (uncharged murders by enterprise members admissible to prove the existence of the RICO conspiracy); *United States v. Baez*, 349 F.3d 90, 94 (2d Cir. 2003) (admission of sixteen uncharged robberies to show participation in the criminal enterprise governed by Rule 403, not Rule 404(b)).

Likewise, where the charged enterprise's racketeering activity or conspiracy includes robberies, courts routinely admit uncharged robberies and other crimes by enterprise members to prove material, non-propensity issues—intent, plan, identity, membership, and the existence of the enterprise—and, when charged as a conspiracy, as direct (intrinsic) evidence of the scheme. *See, e.g., United States v. Washington*, 347 F. App'x 704, 706 (2d Cir. 2009) (unpublished) (uncharged robberies admitted as direct evidence of Hobbs Act robbery conspiracy; not Rule 404(b)); *United States v. McClaren*, 13 F.4th 386, 401 (5th Cir. 2021) (evidence of drug sales, guns, and multiple murders admissible in gang RICO/VICAR case involving murder, robbery, extortion, and other

serious offenses); *United States v. Payne*, 591 F.3d 46, 49–52 (2d Cir. 2010) (RICO/VICAR prosecution arising out of drug trafficking and robberies; enterprise proved through violent acts including robberies); *United States v. Zelaya*, 908 F.3d 920, 924–36 (4th Cir. 2018) (MS-13 RICO/VICAR case; gang violence and related acts—including robberies—properly admitted to establish enterprise and VICAR purpose). These cases confirm that charged and uncharged robberies may be admitted to prove enterprise membership and VICAR/RICO elements or, where charged as conspiracy, as intrinsic proof of the scheme.

Similarly, courts have admitted evidence of uncharged murders committed by enterprise members as relevant to show the existence of the enterprise when the VICAR count includes murder as one of the racketeering activities committed by the enterprise. *See United States v. Tse*, 135 F.3d 200, 208 (1st Cir. 1998) (uncharged criminal activity probative of the enterprise element in a VICAR prosecution); see also *United States v. Fuentes*, 501 F. App'x 70, 74 (2d Cir. 2012)(unpublished) (collecting cases).

Thus, it is well settled that in prosecutions for racketeering offenses, the government may introduce evidence of charged and uncharged offenses to establish the existence of the criminal enterprise. *Baez*, 349 F.3d at 93 (internal citation omitted). Such evidence is not considered "other crimes" evidence subject to Rule 404(b) because it is intrinsic to the charged offenses. *See id.* at 93–94 (internal citations omitted). "Evidence of another act is 'intrinsic,' and thus does not violate [Rule 404(b)], if it and evidence of the crime charged are inextricably intertwined, or both acts are part of a single criminal episode, or the other acts were necessary preliminaries to the crime charged." *United States v. Williams*, 343 F.3d 423, 436 (5th Cir. 2003).

Here, the robbery evidence is part of the necessary narrative leading up to the events charged in Count One. The robbery evidence shows the formation and operation of an

7

association-in-fact enterprise. Moreover, the evidence goes to prove an element of the VICAR offense because it makes it more probable that an enterprise engaged in robbery, murder, and drug trafficking existed and that Richards was a member of that enterprise. The robbery was committed by Richards while affiliated with the enterprise and pursuant to motives related to the enterprise:

> **i. Shaquile O'Neal Richards committed this robbery approximately one year before the murder of S.J., consistent with the 103 gang's pattern of committing robberies to further and maintain his position in the enterprise.**

Evidence of this robbery should therefore be admitted at trial as to both defendants to prove they were members of the same enterprise and that the enterprise engaged in robbery—facts relevant to the offenses charged in Count One.

Crucially, central to the Government's case are the prison-recorded calls among Richards, Nicks, and other enterprise members, captured while Richards was incarcerated for this enterprise-related robbery. Those calls, and the fact of Richards's incarceration at the time they were recorded, were admitted at the first trial. The authorities previously cited squarely support admission of the nature of the robbery for which Richards was convicted as probative of the enterprise's operations, including its participation in racketeering activity such as robbery.

Because the robbery evidence is intrinsic to the charged crimes, it is not subject to Rule 404(b). *See United States v. Coleman*, 78 F.3d 154, 156–57 (5th Cir. 1996) (holding that "other-act" evidence is intrinsic where it is inextricably intertwined with the charged offense, part of a single criminal episode, or necessary to complete the story of the crime; intrinsic evidence does not implicate Rule 404(b)). Nonetheless, in an abundance of caution, we address why the evidence of the defendants' participation in the listed murders is likewise admissible under Rule 404(b).

**B.      Fed. R. Evid. 404(b)**

Fed. R. Evid. 404 (b) permits the admission of prior bad acts to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." "It is unnecessary that the extrinsic evidence fit neatly under one of the exceptions listed in Rule 404(b), as this list is not exhaustive." *United States v. Ebron*, 683 F.3d 105, 131 (5th Cir. 2012).

Notably, our Court of Appeals has admitted evidence under Rule 404(b) to rebut defenses of innocent involvement or mere presence. *See United States v. Cockrell*, 587 F.3d 674, 678–79 (5th Cir. 2009) (affirming admission of prior, similar offense to show intent and that the defendant was not "accidentally swept up" in a distribution scheme). In conspiracy cases, "other-acts" evidence may be admissible as background, to demonstrate a relationship of mutual trust, or to enable the jury to understand how the illegal relationship between co-conspirators developed. *See United States v. Lin Guang*, 511 F.3d 110, 121 (2d Cir. 2007).

The Court must employ a two-step analysis in determining the admissibility of prior bad-act evidence under Rule 404(b). *United States v. Anderson*, 933 F.2d 1261, 1268–69 (5th Cir. 1991). First, the Court must assess whether the evidence has special relevance (other than propensity), considering the degree of similarity between the extrinsic act and the charged offenses. *Id.* at 1269. The other act need not be identical to the crime charged so long as "the common characteristic [is] the significant one for the purpose of the inquiry at hand." *Id.* Second, the Court must determine whether any potential unfair prejudice substantially outweighs the probative value of the evidence. *Id.*

This is a case involving an enterprise engaged in murder, robbery, and drug trafficking. Thus, evidence of the defendants' involvement in robberies is sufficiently similar to the charged conduct. Furthermore, the robbery occurred approximately one year before the crimes charged in

the second superseding indictment. The robbery therefore has special relevance, providing proof of opportunity, intent, and knowledge.

Notably, the events of this robbery will enable the jury to understand how enterprise members operated and furthered the goals of the organization. The robbery would help to show the level of involvement of each defendant in an enterprise where members participated in murders, robberies, and drug-trafficking activities and will assist the jury in assessing each defendant's culpability.

Furthermore, evidence of Richards's participation in the robbery is proof of his intentional and knowing participation in the enterprise. Admission of Richards's robbery conviction is necessary to rebut any purported defense of innocent involvement in the 103 enterprise. Significantly, during the first trial, defense witness Marquis J. Erskin, whom the Government expects will testify again at retrial, contested the Government's theory that the 103 gang was a "gang" or a "criminal enterprise," even though he pleaded guilty—knowingly and voluntarily—to being part of the same gang/criminal enterprise.[3]

Finally, the Court should not exclude the murder evidence under Rule 403. The charged enterprise includes robbery as a listed racketeering activity; and the case is, by its nature, rife with violence. Courts of Appeals have consistently held that Rule 403 excludes only unfair prejudice— not probative, case-specific evidence of violence—and they review a district court's balancing with "an especially high level of deference." *United States v. Dillon*, 532 F.3d 379, 387 (5th Cir. 2008). *See, e.g., McClaren*, 13 F.4th at 401 (evidence of drug sales, guns, and multiple murders admissible in RICO conspiracy); *United States v. Ramírez-Rivera*, 800 F.3d 1, 44 (1st Cir. 2015)

---

3 Specifically, Erskin testified that 103 was not a criminal gang, but a group of people from the neighborhood that grew up together. He also contested that the group that a hierarchy, among other gang characteristics. Transcript of Marquis Erskin, Day 7 – Witness Testimony Afternoon Session, at 17–37, *United States v. Richards*, et al., No. 4:23-CR-00105 (S.D. Tex. Jan. 21, 2026).

(uncharged murder evidence not unfairly prejudicial under Rule 403 in a violent RICO conspiracy case). Indeed, "[u]nfair prejudice … means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's note.  In this trial context, evidence of defendant Richards' involvement in robbery will not cause unfair prejudice that substantially outweighs its probative value in proving the existence of a racketeering enterprise, as well as opportunity, knowledge, intent, and the defendants' roles within the enterprise.

For these reasons, the United States respectfully requests that the Court GRANTS this Motion in Limine.

RESPECTFULLY SUBMITTED,


JOHN MARCK
Acting United States Attorney


*/s/ Kelly Zenón-Matos*
Kelly Zenón-Matos
Assistant United States Attorney
United States Attorney's Office
Southern District of Texas
Texas Bar No. 3848388
1000 Louisiana St., Suite 2300
Houston, TX 77002
Phone: 713-567-9000
Email: kelly.zenon@usdoj.gov



*/s/ Jodi L. Anton*
Jodi L. Anton,
Trial Attorney
Department of Justice
Violent Crime and Racketeering Section (VCRS)
1301 New York Ave., NW, Suite 700, Washington, DC 20005
Florida Bar Number 184098

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motion was delivered to counsel for the Defendant as listed via e-filing on July 2, 2026.

By: */s/ Kelly Zenón-Matos*
Kelly Zenón-Matos
Assistant United States Attorney
United States Attorney's Office
Southern District of Texas

## CERTIFICATE OF CONFERENCE

On July 2, 2026, the undersigned prosecutor sent a copy of this motion to defense counsels to inquire about their position. Both expressed opposition to the motion.

By: */s/ Kelly Zenón-Matos*
Kelly Zenón-Matos
Assistant United States Attorney
United States Attorney's Office
Southern District of Texas