**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **v.** | **No. 4:23-CR-00105-2** |
| **ALEXANDRA ELIZABETH NICKS,** | |
| **Defendant** | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO SUPPRESS**

Defendant Alexandra Nicks submits this reply in support of her Motion to Suppress and in response to the Government's Response in Opposition (Dkt. 507). The Government's response, and the forensic log it attaches as Exhibit 1, confirm rather than refute the core defect in the search of Ms. Nicks's iPhone 12: the device sat without any documented forensic activity for more than two years, and the ultimate extraction was accomplished by defeating a four-digit passcode that took over a year to crack once the Government's own tool finally supported the device. Neither fact is disputed. Both compel suppression.

**I. The Government's Own Log Corrects — and Strengthens — the Timing Record**

Ms. Nicks's motion stated that law enforcement made no attempt to access the device until October 1, 2025. The Government's Exhibit 1 shows that TSDFU in fact made three unsuccessful compatibility attempts in 2022 — on February 28, June 14, and November 18 — each ending in the same result: the device was "not currently supported" by the Government's forensic tool.

What the log also shows, however, is more significant than what it corrects. Between the last documented attempt on November 18, 2022, and the next entry on December 6, 2024, the log

1

contains nothing. No attempt, no compatibility check, no status review — for twenty-five consecutive months. The Government's own business record therefore establishes a documented 25-month period of total inactivity, sandwiched between a documented set of good-faith failures and a documented resumption over two years later. This is not a case in which the defense must speculate about what the Government was doing; the Government's own exhibit answers the question, and the answer is nothing.

The Government's response characterizes its handling of the device as "continuously" executing the warrant "over multiple years." Exhibit 1 does not support that characterization. A tool that is checked three times in ten months and then left untouched for the next twenty-five is not being continuously executed against; it is being shelved pending developments outside the Government's control, with no showing that anyone monitored, inquired about, or prioritized the device during that period. The Court should credit the Government's own log over the adjective its brief uses to describe it.

## II. The Delay Cannot Be Justified as Technical Complexity — the Passcode Was a Four-Digit PIN

The Government's entire reasonableness argument rests on the premise that forensic examination of encrypted devices is inherently time-consuming, citing *United States v. Burgess*, 576 F.3d 1078 (10th Cir. 2009), and *United States v. Jarman*, 847 F.3d 259 (5th Cir. 2017), for the proposition that courts tolerate lengthy delays because of "the complexity of digital evidence." That premise does not survive contact with the Government's own extraction report. Once GrayKey finally supported the device in December 2024, the passcode protecting it was found to be "1515" — a four-digit numeric PIN with, at most, 10,000 possible combinations. A brute-force

2

attack against a four-digit PIN is not a complex undertaking; it is one of the simplest tasks a modern forensic tool performs, ordinarily resolved in hours.

Yet the log shows the brute-force process running from December 6, 2024, until the PIN was recovered on January 16, 2026 — more than thirteen months — and includes an entry on January 15, 2026, in which a technician discovered that the brute-force process "had stopped running" and had to be reattached and restarted, with no indication how long it had been idle before anyone noticed. That entry is not evidence of diligence. It is evidence that, even during the period the Government characterizes as active forensic work, the device sat unmonitored for some undetermined stretch of a thirteen-month window against a target that should not have taken thirteen months to crack. The complexity that justified delay in *Jarman* and *Burgess* — genuinely difficult encryption, ongoing privilege review, high data volume — is simply absent here. What the record shows instead is a low-complexity target processed with low priority.

**III. The Warrant's Central Justification Expired Years Before the Search Was Executed**

The Government does not dispute that Shaquille Richards, the fugitive co-defendant whose location was the first and most prominently stated basis for the warrant, was taken into custody in March 2023. Nor does it dispute that TSDFU did not resume any work on the phone until December 2024 — twenty-one months after that rationale had already been extinguished — and did not complete the extraction until January 2026, nearly three years after Richards's capture. Whatever urgency the manhunt is said to have supplied in November 2021 was gone long before the Government resumed its effort, and the pace of the Government's effort did not change when that urgency disappeared: the file was equally dormant before and after March 2023.

3

The Government responds that the warrant rested on "several independent bases" that did not depend on Richards's capture, so the mooting of one purpose does not moot the whole warrant. Even accepting that premise, it does not answer the staleness problem. If the phone truly contained ongoing evidence that Ms. Nicks was directing gang activity or evidence relevant to a long-term gang investigation, as the remaining stated bases assert, the Government's multi-year delay in retrieving that evidence is itself difficult to reconcile with any genuine investigative urgency. The Government never returned to a magistrate to renew or refresh its showing after the passage of years, even though it now argues that independent, ongoing bases survived the original warrant's more time-sensitive justification. Probable cause that is too stale to require expedited action is also too stale to be presumed to persist unrefreshed for over four years.

## IV. The Affidavit Did Not Establish a Particularized Nexus to This Device

The Government's response argues that Sergeant Turner's affidavit is "a far cry" from the bare-bones affidavits condemned in *United States v. Morton*, 46 F.4th 331 (5th Cir. 2022) (en banc), because it includes "non-generic, defendant-specific communications and platform-specific identifiers." But those identifiers describe Ms. Nicks's Instagram messages and recorded jail calls — not the iPhone 12 seized from her in November 2021. The affidavit never alleges that any of the cited communications occurred on that device, that the device was used to access the identified accounts, or that any witness or investigator traced any of the described conduct to that phone specifically. What the affidavit shows is that Ms. Nicks, in general, communicated electronically over a period of years. What it does not show is a fair probability that this particular device — as opposed to any other phone, computer, or account she may have used — contains evidence of those communications.

That gap is precisely the defect *Morton* identifies: a showing of general criminal association and general habits of communication, offered in place of case-specific facts connecting the item to be searched to the offense under investigation. The affidavit's own language underscores the point. Its central basis for the Richards-related search — that the phone "likely" "may" contain useful information — describes a hope, not a fact. The Government is correct that probable cause is a probability standard rather than a certainty standard, but a probability still requires some articulated basis for believing the fact is true of this device. Generalized knowledge that gang members use cell phones to communicate is not particular to Ms. Nicks's iPhone 12, and the affidavit supplies nothing more specific to close that gap for any of its five stated bases.

## V. Good-Faith Reliance Does Not Extend to Years of Undocumented, Unmonitored Execution

The Government invokes *United States v. Leon*, 468 U.S. 897 (1984), and *United States v. Cherna*, 184 F.3d 403 (5th Cir. 1999), to argue that suppression is inappropriate regardless of the affidavit's sufficiency. *Leon's* good-faith exception protects an officer's objectively reasonable reliance on a magistrate's probable-cause determination at the time the warrant issues. It does not retroactively bless whatever the Government does with the warrant for the next four years. The reasonableness of execution is a separate inquiry from the reasonableness of reliance at issuance, and the record here defeats reasonableness at the execution stage independent of how the affidavit is judged: a twenty-five-month documented gap with no logged activity, followed by a brute-force run against a four-digit PIN that was itself left unmonitored long enough for the process to stop without anyone noticing, is not the conduct of officers diligently executing a warrant in good faith. It is the conduct of officers who set a task aside and returned to it only when circumstances outside their own diligence — a software update — made it convenient to do so.

5

If the Government's pattern of documented inactivity followed by unmonitored, extended processing is enough to satisfy *Leon*, then *Leon* would excuse virtually any delay so long as a warrant existed at the outset, no matter how long the Government waits or how little attention it pays to the device once it resumes. That is not the law. Good faith requires diligence throughout, not merely a validly issued warrant at the starting line.

## VI. Conclusion and Alternative Request for a Hearing

The Government's Response in Opposition, together with its own Exhibit 1, confirms that the search of Ms. Nicks's iPhone 12 was executed only after a twenty-five-month documented gap in all forensic activity, that the ultimate extraction defeated a four-digit passcode that should not have required over a year to crack, and that the warrant's central stated justification — locating a fugitive — had been moot for nearly three years by the time the search was completed. On this record, the search was neither timely nor diligent, the underlying affidavit did not establish a particularized nexus to this device, and good-faith reliance does not excuse years of undocumented and unmonitored execution.

For these reasons, and those set forth in her original motion, Ms. Nicks respectfully requests that the Court suppress all evidence obtained from the search of the iPhone 12, together with all fruits of that search. In the alternative, Ms. Nicks respectfully requests an evidentiary hearing to examine the twenty-five-month gap in forensic activity and the stalled brute-force process reflected in the Government's own Exhibit 1, neither of which is otherwise explained in the record.

6

Respectfully submitted,

*/s/ Judith Shields*
Judith Shields
SDTX No. 424027
Texas State Bar No. 00793271
Attorney for Alexandra Nicks
10655 Six Pines, Suite 230
The Woodlands, Texas 77380
Phone: 936-703-5002
Fax: 877-900-2822
JudithShieldsAttorney@gmail.com

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing reply was delivered to all counsel of record

via ECF on July 15, 2026.

*/s/ Judith Shields*
Judith Shields